**Richard Dale DUFF, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 585S206.

Supreme Court of Indiana.

May 28, 1987.

Rehearing Denied Aug. 5, 1987.

John D. Clouse, Michael C. Keating, Laurie Baiden Bumb, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A trial by jury resulted in a conviction of Theft, a Class D felony, and a finding that appellant was an habitual criminal. He was sentenced to a period of thirty-two (32) years.

The facts are: In the afternoon of March 15, 1984, Frances Weil discovered that her house had been burglarized. Some of the items taken were a checkbook, a calculator, furs and letter openers. Photographs of footprints were taken at the point of entry into the home.

During the afternoon on that day, appellant was picked up by Jerry McGill on Washington Avenue, which is several blocks from the Weil home. He was wearing blue shorts, a cutoff sweat shirt and tennis shoes. McGill gave appellant a red gym bag which contained a change of clothes. He then let appellant out of the car near a rest room building at Garvin Park.

Later, McGill and Steve Ritchie saw appellant walking down the street wearing different clothes. He again entered their car and shortly thereafter police officers stopped the vehicle. When officers removed appellant from the vehicle, they discovered Weil's calculator and checkbook on the floor under the front seat, in front of the rear seat that had been occupied by appellant. Also on the floor, under the rear seat, they found a pair of pliers, gloves and a letter opener.

After the arrest, Ritchie took police officers to the rest room in Garvin Park where Weil's furs were discovered stuffed in a space between the rest rooms. The red gym bag was recovered near Pigeon Creek. Inside the bag were gym shorts, a sweat shirt and tennis shoes. The photographs of the footprints found near Weil's home were compared with the tennis shoes by Michael Oliver, who indicated that the shoes were of the same type as those making the prints near Weil's home.

Appellant claims that the trial court erred in failing to grant a mistrial following a statement made in the testimony of Officer Caine. Officer Caine stated:

"Mr. Duff [appellant] stated that if I had known, myself, if I had known last night that he was wanted why didn't I arrest him then and save him a lot of trouble."

Appellant takes the position that this statement is a disclosure of unrelated criminal activity and that the making of such a statement should have resulted in a mistrial. We cannot agree with appellant that the statement in any way identifies a prior crime. There is a clear implication that appellant was wanted by the officer for some reason; however, that reason is not disclosed. The true gravamen of the statement is that had appellant been arrested the night before it would have saved him a lot of trouble, thus implying that he would not have been involved in the burglary of Weil's home if he had been arrested. However, even this is highly speculative, as the most we have is a statement by the arresting officer concerning a remark made by appellant upon his arrest.

■ As this Court stated in *Maldonado v. State* (1976), 265 Ind. 492, 495, 355 N.E.2d 843, 846:

> "Evidence which is otherwise competent and relevant and which tends to prove or disprove a fact in issue is not inadmissible even though it tends to show guilt of another crime, especially if the two crimes are related. (citation omitted)."

Generally, volunteered statements made to police shortly after arrest are admissible. *United States v. Wolff* (7th Cir.1969), 409 F.2d 413, *cert. denied*, 396 U.S. 858, 90 S.Ct. 124, 24 L.Ed.2d 108.

■ The volunteered statement does not even rise to the stature of describing a prior crime. We see no reversible error in the denial of appellant's motion for mistrial.

■ Appellant claims the trial court erred in restricting cross-examination concerning his statement to the police. During the direct testimony of Police Officer Zirkelbach, the State placed in evidence parts of appellant's statement. On cross-examination, appellant's counsel attempted to introduce other portions of that same statement. The prosecuting attorney objected to such introduction on the ground that the statements were self-serving and thus inadmissible. The trial court sustained the objection.

Appellant correctly claims the general rule to be that where a portion of a statement has been placed into evidence, the opponent may introduce the remainder, citing 7 *Wigmore, Evidence* §§ 2094 and 2113 (Chadbourn rev. 1978) and *McCormick on Evidence* § 56 (3d ed. 1984). However, this Court has held that self-serving declarations may be omitted for the reason that the person involved should not be permitted to enhance his credibility by such method. *Marts v. State* (1982), Ind., 432 N.E.2d 18. In the instant case, the statements which appellant sought to place in evidence were clearly self-serving and the trial court ruled properly in sustaining the State's objection.

■ Appellant contends the trial court erred in giving and refusing certain instructions. He claims the trial court erred in giving State's Instruction No. 3, which states that exclusive possession of stolen property soon after the theft, if not explained, gives rise to an inference of guilt. Such an instruction is a proper statement of law. *Prentice v. State* (1985), Ind. 474 N.E.2d 496.

Appellant was arrested the same day of the burglary and items taken in the burglary were found in close proximity to the automobile seat he was occupying at the time of his arrest. There was no error in giving the instruction.

Appellant claims the trial court erred in failing to give his Tendered Instruction No. 2, the substance of which was that the mere presence of appellant near the scene of the crime was not sufficient in and of itself to infer that he participated in the crime. He also claims the trial court erred in failing to give his Tendered Instruction No. 4, which in substance stated that it is a defense to show that appellant was unaware of his possession of the property for a time sufficient to terminate his possession.

■ As to appellant's Tendered Instruction No. 2, it is a correct statement of the law; however, the evidence in this case goes far beyond appellant's mere presence at or near the scene of a crime. The real question presented to the jury was his possession of the goods of the victim of the crime. An instruction should be applicable to the issues supported by the evidence. *French v. State* (1977), 266 Ind. 276, 362 N.E.2d 834.

■ As to appellant's Tendered Instruction No. 4, he cites Ind.Code § 35–41–2–1(b), which reads:

> "If possession of property constitutes any part of the prohibited conduct, it is a defense that the person who possessed the property was not aware of his possession for a time sufficient for him to have terminated his possession."

In dealing with this statute in *Jones v. State* (1983), Ind.App., 457 N.E.2d 231, 235, the court observed:

"Jones asserts that from the point of awareness of possession of the items until he learned that they were stolen, he did not have time to discover the identity of the owner and return them to him. We are of the opinion that the statute under which instruction number 3 was copied, IND.CODE 35–41–2–1, was generally meant to apply to crimes such as certain controlled substances offenses, where knowing possession of contraband is the gravamen of the offense. To our knowledge, present possession is *not* a necessary element of theft, though it can be a factor in the chain of proof of theft. Once property is stolen, the crime is completed and it is not a defense to the offense to return it belatedly." (original emphasis).

We believe the Court of Appeals is correct in its observation of the operation of the statute. We further observe that the State's Instruction No. 3, above referred to, correctly dealt with the issue of possession as it was presented by the evidence in this case. There was no error in refusing appellant's Instruction No. 4.

■ Appellant claims the trial court erred in the admission of proof of three prior felonies during the habitual criminal portion of the trial. In order to support the habitual charge, the State furnished proof of three prior felonies: a theft conviction occurring November 5, 1980; a theft conviction occurring April 1, 1981; and a robbery conviction occurring April 1, 1981. Ind.Code § 35–50–2–8 provides that a person may be sentenced as an habitual offender if it is shown that he has accumulated two prior unrelated felony convictions.

In the case at bar, it was unnecessary under the statute for the State to have alleged the third conviction; however, this Court has ruled that the allegation of a third conviction is mere surplusage. *St. Mociers v. State* (1984), Ind., 459 N.E.2d 26; *Hall v. State* (1980), 273 Ind. 507, 405 N.E.2d 530. Appellant argues that the first alleged offense and the third alleged offense are not prior unrelated felonies, in that he had not been sentenced for offense number one at the time he committed offense number three, citing *Graham v. State* (1982), Ind., 435 N.E.2d 560 and *Miller v. State* (1981), 275 Ind. 454, 417 N.E.2d 339. The fact remains, as the evidence clearly shows, appellant had been twice convicted of prior unrelated crimes.

The trial court sustained appellant's motion to strike the third alleged prior unrelated crime. Appellant now claims that the court's striking of said crime came too late. The trial court had at first overruled appellant's objection to the third alleged prior felony but at the end of the State's evidence the court granted appellant's motion to strike and remove the third felony conviction from the State's charge. As noted above, its presence in the charge was mere surplusage and not a basis to nullify the proceedings; however, the action of the trial court in striking the third felony is of no moment. The State complied with the statute by its proof of the two prior unrelated felony convictions.

■ Appellant also claims the trial court erred in admitting State's exhibits which demonstrated the prior unrelated felony convictions. He claims that the Vanderburgh County Clerk's certification indicates that the documents are true and complete abstracts of judgments, whereas he claims the documents are in fact order book entries of commitments. Here we are dealing in a case of semantics. The fact remains the records certified by the clerk clearly indicate the prior convictions of appellant. The certifications were sufficient for the purpose for which they were used. *Griffin v. State* (1981), 275 Ind. 107, 415 N.E.2d 60.

■ Appellant also claims the trial court erred by instructing the jury that they were not the finders of the law during the habitual offender proceeding. The proceeding in this case was properly handled by the trial judge. In an habitual criminal proceeding, the jury has the sole duty of finding whether or not the defendant has been twice previously convicted of unrelated crimes. They are not involved with the applicable law or the sentencing of

appellant. *Jones v. State* (1983), Ind., 449 N.E.2d 1060.

The judgment of the ·trial court is affirmed pursuant to Ind.R.App.P. 15(F).

SHEPARD, C.J., not participating.

PIVARNIK, J., concurs in opinion of GIVAN, J.

DeBRULER and DICKSON, JJ., vote to reverse and remand with separate opinions.

DeBRULER, Justice, separate opinion.

John Zirkelbach, police officer, city of Evansville, testified on direct examination during the state's case in chief that appellant, while under police interrogation, had verbally described his conduct on the day of the crime. He admitted that he was jogging in the neighborhood where the burglary took place. He admitted further that pursuant to his request, he had been picked up by a relative in a car, provided a change of clothes, transported to Garvin park, where the burglary fruits were discovered by the police, and where he changed clothes.

On cross-examination of Zirkelbach, the trial court ruled that defense counsel could not bring out the balance of appellant's statement in which he denied committing the burglary and having knowledge of the stolen goods, and explained his desire to change clothes as relating to the fact that he had just found out that the police wanted to talk to him about "an auto theft involved in an extradiction [sic] to New Mexico."

I believe the law regards this ruling as error, since appellant's conduct as described by him might be construed as importing criminality when viewed alone, but when examined in connection with the balance of what he said, it might be considered consistent with innocence. *Dickinson v. State* (1944), 222 Ind. 551, 55 N.E.2d 325. Furthermore it has been held appropriate that the balance of the statement favorable to the defendant "be called out by cross-examination of the same witness by whom the unfavorable parts have been narrated." *Metzer v. State* (1872), 39 Ind.

596. I would hold that in this situation, the rule against the introduction of self-serving statements, must give way to the right of the defendant to present relevant evidence and to have a fair opportunity to cross-examine opposing witnesses.

The state contends that the ruling, if error, was harmless, since the subject contained in the excluded balance of the statement was covered by the testimony of appellant's father, a defense witness. There is nothing in this testimony about appellant's statement to Zirkelbach, and furthermore it does not have an explanatory or rebuttal force equivalent to appellant's own timely explanation during interrogation of his furtive conduct. Consequently, I am unable to agree with this contention of the state that the court's ruling was harmless.

I would therefore reverse and remand for a new trial.

DICKSON, Justice, separate opinion.

I must take exception to the separate opinion of Justice Givan upon three issues: 1) prohibiting defendant from eliciting the remainder of a prior statement admitted in evidence, 2) the meaning of the term "unrelated" as applied to prior convictions, and 3) role of the jury in habitual criminal proceedings. Upon the remaining issues, I am in agreement.

I

I agree with the reasoning of Justice DeBruler's separate opinion that in this situation, the rule against the introduction of self-serving statements must give way to the right of the defendant to present relevant evidence and to have a fair opportunity to cross-examine opposing witnesses. The rules of evidence have manifested a historical aversion to the admissibility of prior out-of-court statements. Exceptions to the hearsay rule have been carefully drafted in view of the inherent risks of unreliability of such statements. In the event a party is permitted to introduce portions of such a statement, it would appear particularly important to permit the opponent to introduce the remainder. The

finder of fact can then assess weight and credibility accordingly.

In balancing the potential harm resulting from the introduction of self-serving statements against that resulting from the exclusion of relevant portions of prior statements otherwise admitted, I would apply the policy expressed in Trial Rule 43(A) of the Indiana Rules of Procedure: "In any case, the statute or rule which favors the reception of the evidence governs . . ." The issue is analogous to the use of depositions at trial, wherein Trial Rule 32(A)(4) instructs:

> If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which ought in context to be considered with the part introduced, and any party may introduce any other parts.

For these reasons, and those expressed by Justice DeBruler, I disagree with the opinion of Justice Givan on this issue.

## II

I am unable to concur with the language of Justice Givan's opinion regarding the trial court's treatment of the third alleged prior unrelated crime. The opinion appears to condone as "mere surplusage" the charging of a third offense which does not qualify as a prior unrelated felony in a habitual offender proceeding. The opinion states that the trial court's action in striking the third felony "is of no moment." I disagree. Not only did the trial court correctly strike the third felony, but this ruling was of crucial significance.

Our habitual offender statute, Ind.Code § 35–50–2–8, makes multiple references to the phrase "prior unrelated felony convictions." It provides, in pertinent part:

> (a) The state may seek to have a person sentenced as an habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) *prior unrelated felony convictions.*
> (b) After he has been convicted and sentenced for a felony committed after sentencing for a *prior unrelated felony conviction*, a person has accumulated two (2) *prior unrelated felony convictions.* However, a conviction does not count, for the purpose of this subsection if;
> (1) It has been set aside; or
> (2) It is one for which the person has been pardoned.

\*     \*     \*     \*     \*     \*

> (d) A person is an habitual offender if the jury (if the hearing is by jury), or the court (if the hearing is to the court alone), finds that the state has proved beyond a reasonable doubt that the person has accumulated two (2) *prior unrelated felony convictions.* [Emphasis supplied]

In *Erickson v. State* (1982), 438 N.E.2d 269, 273, this Court noted that the term "unrelated felony" applies to the relationship between the prior offenses and the instant felony "in the sense that it is not connected to it as part of the res gestae of the instant crime." In addition, as used in section (b) of the statute, the term "unrelated felony" is defined to require that the prior offenses must be unrelated to each other, in that the commission of the second offense must have been subsequent to sentencing upon the first. *Miller v. State* (1981), 275 Ind. 454, 417 N.E.2d 339, 342; *Graham v. State* (1982), Ind., 435 N.E.2d 560, 561. Thus, for purposes of our habitual offender statute, the prior unrelated felonies must be unrelated not only to the charged offense, but to each other as well.

In the instant case, the State originally introduced evidence of three felonies committed prior to the principal offense. The first was committed on July 5, 1980, and sentencing was imposed on November 5, 1980. Thereafter, on December 16, 1980, the second felony occurred, with a resulting conviction on April 1, 1981. The third felony conviction was for an offense committed on July 6, 1980, almost four months before defendant was sentenced on the first felony and before the second offense was committed. Therefore, to have allowed the jury to use the third felony con-

viction as a predicate offense for the habitual offender determination would have violated the requirement in Ind.Code § 35–50–2–8(b) that a second predicate offense must be committed *after* the sentencing of the first predicate offense. The trial court thus properly removed the third felony from the jury's consideration as a prior unrelated felony.

It is correct that the allegation of a third conviction may be excused as mere surplusage. *St. Mociers v. State* (1984), Ind., 459 N.E.2d 26; *Hall v. State*, (1980), 273 Ind. 507, 405 N.E.2d 530. However, as distinguished in *Miller v. State* (1981), 275 Ind. 454, 417 N.E.2d 339, these "mere surplusage" cases involved additional prior felonies each of which qualified under the statute. In *Miller*, the defendant was charged with four prior felony convictions, but two of these did not qualify as prior unrelated offenses under the habitual offender statute, requiring reversal and remand. We stated:

> But here, the defendant was improperly charged, over his objections, and evidence was submitted on those improper charges. Notwithstanding that competent evidence was admitted to support a finding that the defendant "had accumulated two (2) prior unrelated felony convictions," under this state of the record, it cannot be discerned which of the four alleged prior convictions provided the factual basis for the jury's determination.
>
> A general verdict can not stand when the case was tried and submitted on two theories, one bona fide and the other not. [Citations omitted]

417 N.E.2d at 343.

Removing the third alleged prior conviction from the jury's consideration was necessary to leave the first and second alleged felonies as proper predicates for the habitual offender determination. These two felonies met the definition of prior unrelated felonies, and were properly used to support the habitual offender verdict.

### III

In upholding a jury instruction attempting to explain the absence of information regarding the penalties associated with a habitual offender determination, the opinion of Justice Givan comments, in dicta, that the jury's "sole duty" is "finding whether or not the defendant has been twice previously convicted of unrelated crimes." I respectfully suggest that this is incomplete and not consistent with our recent decision in *Mers v. State* (1986), Ind., 496 N.E.2d 75. In a habitual offender proceeding, the jury must not only determine whether the defendant has been twice previously convicted of unrelated crimes, but it must further determine whether such two convictions, when considered along with the defendant's guilt of the charged crime, lead them to find that the defendant is a habitual criminal. In *Mers*, we stated:

> While the habitual offender phase of the proceeding focuses upon the existence of two prior unrelated felony convictions, prerequisite to this phase is a conviction for the primary underlying felony. A person cannot be found to be a habitual offender upon merely two felony convictions. There must be three. It is from this group of three particular convictions that a jury may determine the "ultimate issue of fact"—whether, based on these three felonies, defendant's sentencing status should be that of a habitual offender.

496 N.E.2d at 79.

Notwithstanding this observation, I do not oppose the result advocated by Justice Givan on this issue. Defendant's sole quarrel with Court's Instruction No. 23 is its final sentence stating that the jury is restricted to determining the facts only "and not the law" during a habitual offender proceeding. Defendant argues that this language violates Article 1, Sec. 19 of the Constitution of the State of Indiana which provides: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." The language in controversy did not represent a general directive to the jury. Rather, it merely served as a rationale explaining to the jury that they would not be informed of the penalties which might result from their de-

termination. This was not equivalent to an instruction which impeded the unquestioned right of a jury to refuse to find defendant a habitual offender even with uncontroverted proof of the prerequisite prior felony convictions. *Mers, supra; Baker v. Duckworth* (7th Cir.1985), 752 F.2d 302, 306, *cert. denied*, 472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed.2d 618. *See also, Hudelson v. State* (1883), 94 Ind. 426, 430, 431. Standing alone, the phrase does appear inconsistent with the Indiana Constitution. However, this phrase was merely an incidental component of the court's Instruction No. 23, which was otherwise entirely proper in informing the jury that they would not be advised of the resulting penalties. This inconsistency was not sufficient to mislead the jury or to prejudice the defendant.