v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A05–9808–JV–390.

Court of Appeals of Indiana.

July 27, 1999.

---

Elizabeth Gamboa, Indianapolis, Indiana, Attorney for Appellees.

Jeffrey A. Modisett, Attorney General of Indiana, Sarah E. Scherrer, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

**OPINION**

DARDEN, Judge

*STATEMENT OF THE CASE*

W.T.J. ("J.") appeals the juvenile court's denial of his motions 1) to set aside his plea agreement, and 2) for review of his sentence by the presiding judge.

We affirm in part, reverse in part and remand for re-sentencing.

*ISSUES*

I. Whether the juvenile court erred in denying J.'s motion to set aside his plea agreement.

II. Whether the court erred in denying J.'s motion for review of his sentence by the presiding judge.

*FACTS*

In April 1997, J. was found to have committed an act that would be theft as a class D felony if committed by an adult. In late May and early June 1997, J. burglarized several residences. In July 1997, J. was charged

with the May and June burglaries, including that of Steven Fortner's residence. In September 1997, the juvenile court found that J. had committed acts which would be four class B felony burglaries if committed by an adult. At that time, the count involving the burglary of Fortner's residence was dismissed because Fortner failed to appear in court. Subsequently, on June 1, 1998, the State re-filed the previously dismissed petition alleging J. had committed an act that would be a class B felony burglary if committed by an adult for the burglary of Fortner's residence. Three weeks later, J. entered into a plea agreement with the State wherein he admitted to the allegation, and the State agreed to make no recommendation as to the disposition of the matter.

Thereafter, the trial court issued the following order:

> The Respondent [is] awarded to the Guardianship of the Indiana Department of Correction for housing in any correctional facility for children, and Respondent is detained pending transfer.
>
> The Court as part of its disposition, orders [p]ursuant to IC 31–37–19–10, finds that the respondent committed an act that would be: burglary as a class A or B felony and was at least 14 years old at the time the delinquency act was committed and has two unrelated prior adjudications of delinquency for acts that would be felonies if committed by an adult.
>
> The Court Orders the following to the Department of Correction:
>
> The Respondent be committed to Department of Correction for a determin[ate] sentence of 24 Months.

(R. 29).

On July 1, 1998, J. filed motions to set aside his plea agreement and for review of his sentence by the presiding judge. In the motion to set aside his plea agreement, he argued that he did not knowingly enter into the agreement because he was not advised that a determinate sentence was one of the possible dispositional alternatives. In the motion for review of his sentence by the presiding judge, he argued that he was not eligible for a determinate sentence because the requirements of I.C. § 31–37–19–10 had

not been met. The trial court denied both motions.

## DECISION

### I. Motion to Set Aside the Plea Agreement

■ At the outset, we note that where a juvenile defendant seeks to challenge on appeal the validity of a guilty plea, he must do so through the vehicle of an Ind. Trial Rule 60(B) Motion for Relief from Judgment. *M.Y. v. State*, 681 N.E.2d 1178, 1179 (Ind.Ct. App.1997). We consider J.'s motion as one for relief from judgment under the Rule.

J. argues that the juvenile court erred in denying his motion to set aside his plea agreement. According to J., he did not knowingly enter into the plea agreement because he was not advised that a determinate sentence was one of the possible dispositional alternatives.

■ The juvenile court is required to inform a child and his parents of the "nature of the allegation against the child," and the "dispositional alternatives available to the juvenile court if the child is adjudicated a delinquent child." Ind.Code § 31–37–12–5; *M.R. v. State*, 605 N.E.2d 204, 206 (Ind.Ct. App.1992). Here, our review of the record reveals that during the fact-finding hearing, the court read the allegations of the delinquency petition to J. When asked if he understood the charge against him, J. responded that he did. The court continued as follows: "And in this case there is no recommendation, that means at disposition I could adopt any one of the dispositional alternatives, including committing you to the Department of Corrections, you understand that?" (R. 45). J. responded that he did.

■ This colloquy demonstrated that J. knowingly entered in to the plea agreement. *See M.R.*, 605 N.E.2d at 205 (finding similar colloquy between court and juvenile sufficient to meet the requirements of prior version of I.C. § 31–37–12–5 regarding advisement of dispositional alternatives). The juvenile court did not err in denying J.'s motion to set aside his guilty plea.

## II. *Motion for Review of Sentence by Presiding Judge* ·

J. further argues that the trial court erred in denying his motion for review of his sentence by the presiding judge. Specifically, he contends that he was not eligible for a determinate sentence because the requirements of I.C. § 31–37–19–10 were not satisfied.

Ind.Code § 31–37–19–10 provides in pertinent part as follows:

(a) This section applies to a child who:

(1) is adjudicated a delinquent child for an act that if committed by an adult would be . . .

(C) burglary as a Class A or Class B felony under IC 35–43–2–1;

(2) is at least fourteen (14) years of age at the time the child committed the act for which the child is being placed; and

(3) has two (2) unrelated prior adjudications of delinquency for acts that would be felonies if committed by an adult.

(b) A court may place the child in a facility authorized under this chapter for not more than two (2) years.

■ J. argues that the statutory requirements were not satisfied in this case because he does not have two unrelated prior adjudications of delinquency for acts that would be felonies if committed by an adult. We agree.

■ Although the statute does not define "unrelated prior adjudications of delinquency," this language is similar to language in Ind.Code § 35–50–2–8, the habitual offender statute. Specifically, I.C. § 35–50–2–8 provides in part that the "State may seek to have a person sentenced as an habitual offender by alleging . . . that the person has accumulated *two (2) prior unrelated felony convictions.*" (Emphasis added). We have previously relied on statutes with similar language when we interpret statutory language which has not been defined. *See Scott–Gordon v. State,* 579 N.E.2d 602 (Ind.1991). Here, because the language in the two statutes is similar, we look to interpretations of the habitual offender statute for guidance.

To prove a defendant's habitual offender status pursuant to I.C. § 35–50–2–8, the State must prove that 1) the commission, conviction and sentencing on the defendant's first offense preceded the commission of the second offense, and 2) the commission of the principal offense followed the commission, conviction and sentencing on his second offense. *Spann v. State,* 681 N.E.2d 223, 225 (Ind.Ct.App.1997). "Punishment will be enhanced [pursuant to the habitual offender statute] only when a person who has been given two distinct opportunities to reform persists in his criminality and commits a third separate and unrelated felony act thereby proving himself incorrigible and a most serious threat to our society." *Graham v. State,* 435 N.E.2d 560, 561 (Ind.1982).

In the *Graham* case, Graham was convicted of uttering a forged instrument on September 28, 1976. On September 4, 1979, Graham was convicted of another count of forgery for an act that he committed on February 9, 1979. He was sentenced thereon on September 11, 1979. On September 14, 1979, Graham was charged with three additional counts of forgery for forging checks on February, 5, 1979, February 9, 1979, and February 28, 1979, and with being an habitual offender. He was convicted of the three counts and adjudicated to be an habitual offender.

On appeal, he argued that the requirements of I.C. § 35–50–2–8 were not satisfied because he did not have the requisite felony convictions to sustain his habitual offender status. Specifically, he argued that the commission of the third requisite felony was not subsequent to the conviction and sentencing for the second felony offense. Our supreme court agreed with Graham and reversed his adjudication as an habitual offender.

The facts of *Graham* are analogous to those before us. Here, in April 1997, J. was found to have committed an act which would be auto theft as a class D felony if committed by an adult which we will call his first offense. In late May and early June 1997, a period of approximately two weeks, he burglarized several residences including that of Fortner. (see facts). He was charged with the offenses in July 1997. In September 1997, he was found to have committed acts which would be four class B felony burglaries

if committed by an adult which we will call his second offense. At that time, the count involving the burglary of Fortner's residence was dismissed because Fortner failed to appear in court. In June 1998, J. admitted that he had committed the Fortner burglary in May 1997, an act that would be a class B felony if committed by an adult. He is correct that he did not have the requisite adjudications of delinquency to sustain his determinate sentence because, as in *Graham*, the commission of the re-filed third act of burglary was not unrelated and subsequent to his adjudication of delinquency and final disposition for the second offense.

■ The State contends that I.C. 31–37–19–10 and the habitual offender statute are "separate and distinct" and the sequential requirements of the habitual offender statute do not apply to I.C. § 31–37–19–10. State's Brief, p. 5. However, we agree with J. that the "determinate sentence statute [I.C. 31–37–19–10] is an expression of legislative intent to permit the juvenile a reasonable opportunity to reform through less severe dispositional alternatives before a more severe penalty may be imposed. By requiring two unrelated prior determinations, it is clear the legislature intended to afford the juvenile two distinct opportunities for reforming before proving himself incorrigible and a threat to society by committing a third, serious offense." J.'s Brief, p. 17. This intent is consistent with the underlying policy of the juvenile code to treat children within the juvenile system as persons in need of care, treatment, rehabilitation, and protection. *See P.G. v. State*, 669 N.E.2d 443, 444 (Ind. Ct.App.1996).

Affirmed in part, reversed in part and remanded for re-sentencing.

SULLIVAN, J., concurs.

RUCKER, J., concurs in part and dissents in part with separate opinion.

RUCKER, Judge, concurring in part and dissenting in part

The majority concludes the trial court erred in imposing a determinate sentence. I disagree. A juvenile court is vested with flexibility in determining the appropriate dispositional alternative to impose on a juvenile who is adjudged to be delinquent. *Madaras v. State*, 425 N.E.2d 670, 671 (Ind.Ct.App. 1981) (finding that flexibility provided by juvenile system in dealing with juvenile problems is of primary importance). Although options other than commitment to an institution are available for juvenile courts to utilize in dealing with a juvenile, there are times when commitment to a suitable public institution is in the best interest of the juvenile and of society. *In Matter of Jennings*, 176 Ind. App. 277, 282, 375 N.E.2d 258, 262 (1978). The question, however, is under what circumstances may the juvenile court impose a determinate sentence. Under Ind.Code § 31–37–19–10 a juvenile may be remanded to the custody of DOC for housing in an appropriate correctional facility for up to two years provided, among other things, (1) the juvenile is adjudicated a delinquent because he committed burglary as a Class A or B felony; (2) the juvenile was at least fourteen years of age when he committed the offense; and (3) the juvenile has two *unrelated prior adjudications of delinquency* for acts that would be felonies if committed by an adult. (Emphasis added).

. There is no Indiana case authority discussing the phrase "unrelated prior adjudications of delinquency." The majority has applied the same interpretation used for analogous wording in the habitual offender statute. Thereunder, before a defendant may be subjected to an enhanced sentence for his status as a habitual offender, the State must show that the defendant has accumulated two prior unrelated felony convictions. *See* Ind.Code § 35–50–2–8. "Prior unrelated felony convictions" is interpreted as the felonies are not related to the instant felony convictions in the sense that they are not connected as part of the res gestae of the current crime. *State v. Dennis*, 686 N.E.2d 901, 904 (Ind.Ct.App. 1997). Thus, in order to sustain a finding that a defendant is a habitual offender, the State must prove that the defendant's previous felony convictions were subsequent to the conviction and sentencing upon the first offense. *Id.* More precisely, in order to sustain a finding that a defendant is a habitual offender, the State must prove that the de-

fendant was guilty of two prior offenses, the second of which was committed after the defendant was convicted and sentenced upon the first charge. *Stiles v. State,* 686 N.E.2d 886, 889 (Ind.Ct.App.1997). Under the above formulation W.T.J. does not qualify for a determinate sentence.

Although the language of Ind.Code § 31–37–19–10 is similar to that of the habitual offender statute, its aims and purposes are not. The purpose of the habitual offender statute is to give offenders due warning by conviction, sentencing and imprisonment of the consequences for persistence in criminality. *Cooper v. State,* 259 Ind. 107, 114, 284 N.E.2d 799, 803 (1972). The statute thus penalizes those adult offenders who have not been deterred by previous sanctions. *Steelman v. State,* 602 N.E.2d 152, 160 (Ind.Ct.App.1992). By contrast the underlying policy of the juvenile code is to treat children within the juvenile system as persons in need of care, treatment, rehabilitation, and protection. *P.G. v. State,* 669 N.E.2d 443, 444 (Ind.Ct.App.1996). As a result the juvenile judge is given great flexibility in determining an appropriate sentencing alternative. *Madaras,* 425 N.E.2d at 671. Indeed juvenile proceedings are even civil in nature as opposed to criminal. *Thomas v. State,* 562 N.E.2d 43, 45 (Ind.Ct.App.1990). Because of the juvenile system's different philosophical underpinnings, I conclude that the twice convicted, twice sentenced, and twice imprisoned framework applicable to habitual criminal offenders is not applicable to juvenile offenders. Rather, I would hold that for purposes of Ind.Code § 31–37–19–10 "unrelated prior adjudications of delinquency" means that the earlier adjudications of delinquency are independent of the offense that is currently being charged.

The record shows that W.T.J. has had over eleven referrals to the juvenile court. On April 29, 1997, he was adjudicated a delinquent for committing an act that would be a criminal offense if committed by an adult; namely, auto theft as a Class D felony. On September 19, 1997, he was adjudicated a delinquent for committing numerous acts that would be criminal offenses if committed by an adult, namely several burglaries as Class B felonies and several thefts as Class D felonies. Both adjudications were prior in time and independent of the burglary offense for which W.T.J. is currently charged. Accordingly W.T.J. was eligible for a determinate sentence and the trial court did not err by imposing the same. I therefore dissent on this issue. In all other respects I concur.