(190 P.3d 274)
No. 99,429

In the Interest of P.L.B.

Opinion filed August 22, 2008.

*Jonathan B. Phelps*, of Phelps-Chartered, of Topeka, for appellant.

*Jamie L. Karasek*, assistant district attorney, and *Robert D. Hecht*, district attorney, for appellee.

Before HILL, P.J., PIERRON and GREEN, JJ.

GREEN, J.: P.L.B. appeals from a judgment of the trial court denying his motion to withdraw his plea and to set aside his juvenile adjudication for aggravated indecent liberties with a child. On appeal, the State challenges our jurisdiction to consider this issue. Nevertheless, we determine that we have jurisdiction over this matter. Meanwhile, P.L.B. argues that the trial court abused its discretion in denying his motion to withdraw his plea and to set aside his conviction. We agree. Accordingly, we reverse the juvenile adjudication, vacate the plea, and remand for further proceedings.

On June 21, 2006, the State charged P.L.B. in Shawnee County District Court, Juvenile Law Division, with one count of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A) (Furse). On June 30, 2006, counsel entered an appearance on behalf of P.L.B.

On July 25, 2006, the trial court held a plea hearing. The hearing included the following colloquy:

"[COURT]: You have a right to a trial. And if you exercise that right, the State would have to prove this charge against you, do you understand? Beyond a reasonable doubt.

"[P.L.B.]: Yes, sir, I know.

"[COURT]: You would not be required to present any evidence. The burden would be on the State and it would never shift. Do you understand that?

"[P.L.B.]: Yes, sir.

"[COURT]: In other words, all you would have to do is show up. You wouldn't have to come with any witnesses, any evidence, anything, because you're presumed to be innocent. It would be the State that would have to prove the case against you. Do you understand?

"[P.L.B.]: Yes, sir.

"[COURT]: All right. However, you could present evidence if you chose to do so. Do you understand that?

"[P.L.B.]: Yes, sir.

"[COURT]: And that evidence could include your taking the stand to testify on your own be — behalf. Do you understand?

. . . .

"[P.L.B.]: Yes, I do.

"[COURT]: You could also have witnesses brought in here to testify for you. And if they refused to cooperate, I could issue subpoenas and get them in here. Do you understand?

"[P.L.B.]: Yes, sir.

"[COURT]: Throughout this entire trial process, if you cannot afford a lawyer, this Court would appoint a lawyer to make sure you were ably represented. Do you understand that?

"[P.L.B.]: Yes, sir.

"[COURT]: If at the end of the trial you and your lawyer did not like the outcome, you could appeal that outcome to a higher court. Do you understand?

"[P.L.B.]: Yes, sir.

"[COURT]: Has anyone threatened you to get you to enter a plea today?

"[P.L.B.]: No, sir.

"[COURT]: Have you been promised anything if you plead today?

"[COUNSEL FOR P.L.B.]:
Judge, he understands what the agreement is, but we've discussed that you're not going to be bound by any sentencing in this matter.

"[COURT]: All right. You understand that the final disposition of this matter will be up to me?

"[P.L.B.]: Yes, sir.

"[COURT]: Now if you're entering a plea because you are guessing as to what this Court would do when it comes to sentencing, don't enter the plea. Do you understand that?

"[P.L.B.]: Yes, sir.

"[COURT]: You understand this is a serious offense here?

"[P.L.B.]: Yes, sir."

After the State presented the factual basis, P.L.B. pled no contest to the charge of aggravated indecent liberties in violation of K.S.A. 21-3504(a)(3)(A) (Furse). The trial court found the plea knowingly, voluntarily, and intelligently made and found P.L.B. to be a Violent Offender II as defined by K.S.A. 38-1601 *et seq.*

The trial court and the parties then discussed P.L.B's placement in a treatment program at Marillac. At the conclusion of the hearing, the trial court placed P.L.B. in the temporary custody of the

juvenile justice authority, "with the understanding that placement is to be sought immediately for him in the Marillac program." The court ordered that sentence be imposed upon the completion of the Marillac program.

At sentencing on April 17, 2007, the trial court determined that P.L.B. had completed the Marillac sex offender program, then sentenced P.L.B. to commitment in a juvenile correctional facility for 24 months with 12 months' aftercare. The court further ordered P.L.B. to register as a sex offender, including the posting of his photograph on the Internet/KBI website, to complete DNA registration and pay the accompanying fee, and to pay court costs of $25.

On May 23, 2007, P.L.B. moved to modify sentence. P.L.B. expressed concern that the sentence imposed would cause any progress made during his treatment to be lost. Moreover, he asked the trial court to allow him to complete an independent living program, to place him on probation, and to allow him to follow through with his counseling, therapy, and medication. P.L.B. attached numerous treatment documents to his motion. Although there is no journal entry in the record, the appearance docket reflects that this motion was denied after a hearing on August 15, 2007.

On May 31, 2007, P.L.B.'s original counsel moved to withdraw, which motion was granted by the trial court. On June 4, 2007, new counsel filed an appearance on behalf of P.L.B.

On August 28, 2007, P.L.B. moved to withdraw his plea and to set aside his conviction. P.L.B. asserted that the plea was entered without the trial court informing him of the presumption of innocence or the sentencing alternatives available for a juvenile offender, as required by K.S.A. 2007 Supp. 38-2344(b) and (c). P.L.B. argued that this failure prevented him from entering a knowing, voluntary, and intelligent plea, thereby depriving him of his constitutional rights and constituting reversible error.

The State filed a response to the motion on September 12, 2007, pointing out that the plea hearing transcript reflected that P.L.B. had been informed of the presumption of innocence. The State also suggested that P.L.B. and his counsel left little doubt at the

plea hearing that P.L.B. understood the sentencing options available to the court.

The parties presented their arguments at a hearing on September 27, 2007. At the conclusion of the hearing, the trial judge recited the colloquy he had held with P.L.B. at the plea hearing regarding his rights and concluded:

"I am satisfied that this young man was made aware of his rights as the law requires. I am satisfied that he understood what those rights were. And I am satisfied that he entered a voluntary plea to the charge.

"And as a result of the Court being satisfied that this was a plea that was given freely and voluntarily without any coercion or promises, and that he was duly advised of his Constitutional rights, I will deny the motion to withdraw the plea."

On October 10, 2007, the trial court filed a journal entry reflecting the denial of the motion.

*Did the Trial Court Have Jurisdiction to Consider a Motion to Withdraw a Plea in a Juvenile Matter?*

Before reaching the merits of P.L.B.'s arguments on appeal, we must first consider the State's jurisdictional challenge. The State asserts that there is no jurisdiction under the Kansas Juvenile Justice Code for a trial court to consider a motion to withdraw a plea.

The State did not raise this issue below in its response to P.L.B.'s motion or in oral argument before the trial court. Nevertheless, the issue of subject matter jurisdiction may be raised at any time, whether for the first time on appeal or even on the appellate court's own motion. *Vorhees v. Baltazar,* 283 Kan. 389, 397, 153 P.3d 1227 (2007). If the trial court lacks jurisdiction to enter an order, an appellate court does not acquire jurisdiction over the subject matter on appeal. *State v. McCoin,* 278 Kan. 465, 468, 101 P.3d 1204 (2004).

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Foster v. Kansas Dept. of Revenue,* 281 Kan. 368, 369, 130 P.3d 560 (2006).

The State's entire argument regarding this point is as follows: "The Kansas Juvenile Justice Code does not set forth standards for withdrawing guilty pleas and does not have a comparable statute to K.S.A. 2006 Supp. 22-3210(d). Accordingly there was no juris-

diction for the district court to entertain P.L.B.'s motion to withdraw his plea."

The State's brief is devoid of any case law specifically supporting its contention. The State, however, cites a recent unpublished opinion in which a panel of this court rejected a similar argument. In *In re C.S.G.*, No. 97,306, unpublished opinion filed September 28, 2007, this court noted that several Kansas appellate courts' decisions have suggested that a trial court has jurisdiction to consider a juvenile plea withdrawal. *In re C.S.G.*, slip op. at 2-5.

In *C.S.G.*, the court cited *In re J.C.*, 260 Kan. 851, 852-55, 925 P.2d 415 (1996), where our Supreme Court considered a defendant's appeal of the trial court's denial of the defendant's motion to set aside a prior juvenile adjudication. *In re C.S.G.*, slip op. at 3. In *J.C.*, a juvenile offender argued that the trial court's failure to fully advise him of the consequences of his plea necessitated the setting aside of the adjudication. Although our Supreme Court ultimately affirmed the trial court's denial, our Supreme Court never questioned its jurisdiction to consider the juvenile's motion. Moreover, our Supreme Court pointed out the constitutional safeguards contained in the juvenile plea statute. 260 Kan. at 856.

The next case cited by the *C.S.G.* court was *In re B.S.*, 15 Kan. App. 2d 338, 807 P.2d 692 (1991). In that case, this court allowed a juvenile offender to withdraw his admission to indecent liberties with a minor because the district court had failed to inform the juvenile offender of his rights before the plea. *In re C.S.G.*, slip op. at 3-4. As in *J.C.*, the *B.S.* court did not question its jurisdiction to consider the issue.

Finally, the *C.S.G.* court noted that our Supreme Court has held that "general rules of law" permit plea withdrawal. Slip op. at 4; see *State v. Nichols*, 167 Kan. 565, 573-77, 207 P.2d 469 (1949). In *Nichols*, which was decided before there was a statutory provision for plea withdrawal, our Supreme Court set forth the requirements for a valid plea. Moreover, the court stated that when such requirements are not met, "common justice may authorize or require the setting aside of the plea." 167 Kan. at 577; see *State v. Stough*, 273 Kan. 113, 119, 41 P.3d 281 (2002). Our Supreme Court then noted that the trial court hearing the criminal case

would have jurisdiction to hear and to rule upon a motion challenging a plea in such a circumstance. *Nichols,* 167 Kan. at 577-78.

In rejecting the State's jurisdiction challenge, the *C.S.G.* court concluded: "In light of the Kansas appellate courts' permitting defendants to withdraw pleas absent specific statutory authority, there is a basis for C.S.G. to pursue his claim, and we have jurisdiction to address this appeal." Slip op. at 5.

Our research has revealed no case which has held that a trial court lacked jurisdiction to consider a matter such as this. As a result, we determine that the trial court had jurisdiction to consider P.L.B.'s motion to withdraw his plea.

*Did the Trial Court Abuse its Discretion in Denying P.L.B.'s Motion to Withdraw His Plea and to Set Aside His Conviction?*

On appeal, P.L.B. contends that the trial court erred in denying his motion to withdraw his plea and to set aside his adjudication, because the court failed to inform him of the possible direct consequences of his plea, as required by K.S.A. 2007 Supp. 38-2344(b). P.L.B. asserts that this failure prevented him from entering a knowing, voluntary, and intelligent plea.

In contrast, the State responds that the trial court informed P.L.B. of his rights at the sentencing hearing. In addition, the State contends that P.L.B. and his counsel left little doubt that P.L.B. understood the sentencing options available to the trial court. The State also challenges the timeliness of P.L.B.'s motion to withdraw plea.

Because there is no specific provision in the juvenile justice code for plea withdrawal, we must look to the criminal code's withdrawal provisions in K.S.A. 22-3210 for the appropriate standard of review. See *In re J.C.,* 260 Kan. at 855 (K.S.A. 22-3210 is the adult counterpart to juvenile justice code's plea provisions). After sentencing, a court may set aside a judgment of conviction and allow the defendant to withdraw the plea only to correct manifest injustice. K.S.A. 22-3210(d). "Manifest injustice" has been defined as "something obviously unfair or shocking to the conscience." *State v. Bar-*

*ahona*, 35 Kan. App. 2d 605, 608-09, 132 P.3d 959, *rev. denied* 282 Kan. 791 (2006).

An appellate court will not disturb a trial court's denial of a motion to withdraw a plea after sentencing unless the defendant establishes an abuse of discretion. *State v. Shopteese*, 283 Kan. 331, 340, 153 P.3d 1208 (2007). An abuse of discretion may occur when a trial court "goes outside the framework of or fails to properly consider statutory limitations or legal standards." 283 Kan. at 340. Further, a trial court necessarily abuses its discretion when it makes an error of law. Under the abuse of discretion standard, this court reviews whether the district court's discretion was guided by erroneous legal conclusions. *State v. Gary*, 282 Kan. 232, 236, 144 P.3d 634 (2006).

In exercising its discretion under K.S.A. 22-3210(d), the trial court must consider the following: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). P.L.B.'s arguments are directed at the third factor.

Before a trial court may accept a juvenile offender's plea, K.S.A. 2007 Supp. 38-2344(b) requires the trial court to inform the juvenile offender of the following:

"(1) The nature of the charges in the complaint;

(2) the right of the juvenile to be presumed innocent of each charge;

(3) the right to trial without unnecessary delay and to confront and cross-examine witnesses appearing in support of the allegations of the complaint;

(4) the right to subpoena witnesses;

(5) the right of the juvenile to testify or to decline to testify; and

(6) the sentencing alternatives the court may select as the result of the juvenile being adjudicated a juvenile offender."

If a juvenile offender pleads guilty or nolo contendere, then K.S.A. 2007 Supp. 38-2344(c) requires the trial court to determine, before accepting the plea and imposing sentence, "(1) [t]hat there has been a voluntary waiver of the rights enumerated in subsections (b)(2), (3), (4) and (5); and (2) that there is a factual basis for the plea."

The requirements of K.S.A. 2007 Supp. 38-2344(b) and (c) are virtually identical to those found in the previous version of the statute, K.S.A. 38-1633.

P.L.B. asserts that the record does not show the trial court complied with K.S.A. 2007 Supp. 38-2344(b)(6) by informing him of "the sentencing alternatives the court may select as the result of the juvenile being adjudicated a juvenile offender." A review of the transcript of the plea hearing (and the remainder of the record), including the colloquy quoted above, shows that the trial court did not discuss sentencing alternatives with P.L.B. before his plea. The only discussion regarding sentencing occurred when the trial court told P.L.B. that final disposition would be up to the trial court, that P.L.B. should not guess what the trial court "would do when it comes to sentencing," and that P.L.B. was charged with a serious offense. While these statements suggested that the trial court had options in sentencing P.L.B., they failed to inform P.L.B. what such options were, as required by K.S.A. 2007 Supp. 38-2344(b)(6).

Besides being compelled by the express language of K.S.A. 2007 Supp. 38-2344(b), a trial court is required by case law to inform a juvenile offender of the information specifically contained in K.S.A. 2007 Supp. 38-2344(b). This proposition is vividly illustrated by *In re B.S.*, which P.L.B. cites in support of this argument.

In *B.S.*, this court determined that the trial court erred in relying on the juvenile offender's attorney to inform the juvenile offender of his rights under K.S.A. 38-1633(b), rather than the court itself informing the juvenile offender of his rights. 15 Kan. App. 2d at 339-40. In setting out its reasons for requiring the trial court to inform a juvenile offender, the *B.S.* court stated: "This practice may be well intended, but it does not comport with the statute. K.S.A. 38-1633(b) expressly requires the court to inform the minor of the information specifically contained in the statute." 15 Kan. App. 2d at 339. The *B.S.* court further determined that the trial court's failure to comply with the statute resulted in a record that did not show a knowing and voluntary plea by the juvenile offender. 15 Kan. App. 2d at 339-40. As a result, the *B.S.* court reversed the trial court's denial of the juvenile offender's motion to withdraw

his admission and remanded for further proceedings. 15 Kan. App. 2d at 338, 340.

The State contends that *B.S.* is distinguishable from the current case because in *B.S.*, the trial court had failed to tell the juvenile offender about any of his rights. In contrast, the court advised P.L.B. of all of his rights as required for the acceptance of a plea under K.S.A. 2007 Supp. 38-2344(c). Furthermore, the State asserts that the record shows that P.L.B. understood the sentencing options before pleading, reflecting a knowing and voluntary plea.

Although the record reflects that the trial court enumerated those rights listed in K.S.A. 2007 Supp. 38-2344(c), this does not change the fact that the court also failed to inform P.L.B. of all "the information specifically contained in" K.S.A. 2007 Supp. 38-2344(b), as required by that statute and the *B.S.* holding. The question posed by this omission by the trial court is as follows: Does the trial court's failure to comply with K.S.A. 2007 Supp. 38-3244(b)(6) and *B.S.* result in a record that fails to show a knowing and voluntary plea by *P.L.B.*?

For guidance in determining this issue, we turn once again to the adult counterpart of the juvenile justice code's plea provisions. K.S.A. 22-3210(a)(2) contains the criminal code's equivalent of the requirement in K.S.A. 2007 Supp. 38-2344(b)(6) that a defendant be informed of sentencing alternatives. *In re J.C.*, 260 Kan. at 856. If a review of the entire record demonstrates the plea was knowingly and voluntarily made, the trial court's failure to strictly comply with K.S.A. 22-3210(a) may be harmless error. Nevertheless, where the failure to comply results in the defendant not understanding the nature of the charge or consequences of entering a plea, good cause for granting a motion to withdraw a plea may be found. *State v. Edgar*, 281 Kan. 30, 37-38, 127 P.3d 986 (2006).

The record does not affirmatively show that P.L.B. was aware of the sentencing alternatives available to the trial court when he entered his plea. The requirement that the trial court inform a juvenile offender of dispositional alternatives was established to ensure conformance with constitutional due process requirements. *In re J.C.*, 260 Kan. at 855-56. Knowledge of the sentencing alternatives is a critical part of the plea process and has constitutional

implications: "To be constitutionally valid, guilty or no contest pleas and their resulting waiver of rights ' "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." ' " *Shopteese*, 283 Kan. at 340-41.

The State, however, cites to two cases to support its argument that a knowing and voluntary plea was made. The State asserts that in *In re J.A.*, No. 95,232, unpublished opinion filed July 28, 2006, this court found a "similar colloquy" was sufficient to inform a juvenile offender of his rights and establish a waiver of his rights. Nevertheless, the State overlooks that in *J.A.*, "the [district] court [had] informed *J.A.* of the sentencing alternatives it could select as a result of him being adjudged a juvenile offender." Slip. op. at 2. The district court in *J.A.* complied with the specific requirement that was neglected here. Consequently, *J.A.* does not support the State's argument.

The second case cited by the State is *W.T.J. v. State*, 713 N.E.2d 938 (Ind. App. 1999). Because we are dealing with a specific Kansas statute established to meet constitutional requirements, the applicability of this Indiana case is limited. Furthermore, it seems that the trial court in *W.T.J.* told the juvenile offender that he might be incarcerated, which was ultimately the sentence given. Also, *W.T.J.* relied on another Indiana case in which the juvenile offender watched a videotape which included the sentencing alternatives. 713 N.E.2d at 940; *M.R. v. State*, 605 N.E.2d 204, 206-07 (Ind. App. 1992). In both of these cases, the juvenile offender was furnished more information regarding his possible sentence than the information provided to P.L.B. about his possible sentence. Thus, *W.T.J.*'s persuasive authority is very questionable.

*Timeliness*

Next, we must consider the State's timeliness argument. In determining whether a trial court's failure to inform a juvenile offender of the consequences of a plea is reversible error, permitting a plea withdrawal, we must consider the totality of the circumstances, including the timeliness of the withdrawal request. See *State v. Moses*, 280 Kan. 939, 946, 950-52, 127 P.3d 330 (2006).

In support of its untimeliness argument, the State cites to a quote from *Nichols* contained in *Stough*. The *Nichols* court stated that a motion to withdraw plea " 'should be filed with reasonable promptness, as soon as defendant or his counsel learns facts which would justify the court in setting aside the plea.' " *Stough*, 273 Kan. at 118-19. The State suggests that inclusion of this language shows that the *Stough* court "implicitly recognized" such a time limit for a motion to withdraw plea. Moreover, the State contends that P.L.B.'s motion was not filed within the "reasonable promptness" time requirement.

Nevertheless, it is apparent that the *Nichols* language cited in *Stough* was included for the purpose of setting forth the background and history of the issue. 273 Kan. at 118. The *Nichols* language represented the law when "there was 'no statute specifically pertaining to motions to withdraw pleas of guilty in criminal cases.' " *Stough*, 273 Kan. at 119. After noting *Nichols*, the *Stough* court proceeded to state that when K.S.A. 22-3210(d) was passed,

"the legislature placed no limitation on the time within which a motion to withdraw a plea after sentence must be filed. We will not impose such a limit when the legislature has not so provided. We hold the trial court has jurisdiction at any time after a sentence is imposed to permit a defendant to withdraw his or her plea in order to correct manifest injustice." 273 Kan. at 119.

Nevertheless, in *Moses* our Supreme Court later quoted the "reasonable promptness" language from *Nichols*, as cited in *Stough*, with approval and stated that this was a factor to consider in determining a motion to withdraw a plea, although three justices joined in a concurring opinion stating that they "would not rely on laches or any 'laches-like' arguments to reach the outcome in this case." 280 Kan. at 955; see also *Barahona*, 35 Kan. App. 2d at 608-10 (citing other jurisdictions that consider timeliness). The *Moses* court cited a 12-year delay by the defendant in challenging the trial court's failure to follow K.S.A. 22-3210 as one factor supporting the trial court's denial of the defendant's motion to withdraw his plea. 280 Kan. at 950-52.

Here, P.L.B. moved to withdraw his plea just over 4 months following sentencing. Because the main issue here is P.L.B.'s awareness of the sentencing alternatives available to the trial court,

it follows that P.L.B.'s attention may not have been drawn to the issue until the trial court sentenced him. P.L.B. moved to modify his sentence a month after sentencing, and offered his motion to withdraw his plea 2 weeks after the motion to modify was denied. As a result, we determine that P.L.B.'s motion to withdraw his plea was timely.

*Manifest Injustice*

The *Moses* court considered several other factors in determining whether there was manifest injustice, but the parties here do not offer any argument as to these factors. The factors considered included: there was no factual support in the record for the defendant's claim that the district court had failed to comply with K.S.A. 22-3210; the defendant received competent representation; the defendant indicated he understood the effect of the plea; the defendant could have brought the claim in earlier actions; the State presented evidence of prejudice it would suffer if it had to go to trial after a lengthy passage of time; the defendant was familiar with the criminal justice system; and the defendant had never asserted his innocence. All of these factors weighed against the defendant in *Moses*. 280 Kan. at 950-54. Although some were difficult to determine from the record and lack of argument, it would seem that the only factors not in P.L.B.'s favor were that he apparently received competent representation, that he did not assert his innocence, and that he understood the trial court was not bound by the plea agreement. The factors in P.L.B.'s favor were as follows: that his claims were supported by the plea hearing transcript, that he could not have brought the claim substantially sooner, that there was no showing of prejudice by the State, and that there was no indication that P.L.B. had a previous history with the juvenile justice system.

The totality of the circumstances suggest the trial court erred in denying P.L.B.'s motion to withdraw plea after it had failed to advise P.L.B. of the sentencing alternatives when he entered his plea, as required by K.S.A. 2007 Supp. 38-2344(b). The statutory requirement is in place because of constitutional concerns: the need to inform a juvenile offender of the likely consequences of

his or her plea. 260 Kan. at 856. Because the trial court did not tell P.L.B. about the sentencing alternatives that the court could impose upon the acceptance of his plea, we determine that he could not have made a knowing and voluntary plea. Moreover, we determine that a plea under these circumstances would have been unfair. 35 Kan. App. 2d at 608-09. Because the trial court did not apply its discretion within the legal standards of K.S.A. 2007 Supp. 38-2344(b) before accepting P.L.B.'s plea, we determine that the trial court abused its discretion by denying P.L.B.'s motion to withdraw his plea.

Plea vacated, juvenile adjudication reversed, and case remanded to the trial court for further proceedings.